UNITED STATES DISTRICT COURT

DISTRICT OF SOUTH DAKOTA

WESTERN DIVISION

| | |
|---|---|
| PATRICK NOEL MILTON HARDING, | 5:18-CV-05022-JLV |
| Movant, | |
| vs. | REPORT AND RECOMMENDATION |
| UNITED STATES OF AMERICA, | |
| Respondent. | |

## INTRODUCTION

On March 22, 2018, movant Patrick Noel Milton Harding filed a *pro se* motion to vacate, set aside, or correct his federal sentence pursuant to 28 U.S.C. § 2255.  Respondent United States of America (government), has filed a motion to dismiss on the merits.  See Docket No. 10.  However, in February, 2018, prior to the filing of the instant § 2255 motion, Mr. Harding's term of supervised release was terminated.  See United States v. Harding, 5:14-cr-50122-JLV-1, Docket No. 184 (DSD Feb. 6, 2018) (hereinafter "CR").

Concerned it may lack subject matter jurisdiction over Mr. Harding's § 2255 motion, this court issued an order to show cause asking both parties to address whether the termination of Mr. Harding's supervised release deprives this court of jurisdiction.  See Docket No. 13.  Mr. Harding filed a response, as did the government.  See Docket Nos. 16, 17 & 18.  The following is this court's recommendation for the disposition of Mr. Harding's § 2255 motion.

## FACTS

Mr. Harding, a permanent resident alien in the United States but a citizen of Trinidad, was charged via indictment with possession of a firearm by a felon and possession of a stolen firearm on November 19, 2014.  CR Docket No. 1.  He came into federal custody pursuant to a writ of habeas corpus ad prosequendum on January 12, 2015.  See CR Docket No. 6.  An initial appearance and arraignment was held on the indictment that same day.  See CR Docket No. 8.  At that hearing, the government advised Mr. Harding of the maximum penalties for the charges in the indictment, but never indicated to Mr. Harding that one of the consequences of conviction of either crime might be deportation from the United States.  This magistrate judge also failed to advise Mr. Harding at that first court appearance that he could be deported if he were convicted of either of the crimes he stood charged with.[1]

On July 2, 2015, Mr. Harding filed a signed plea agreement in which he agreed to plead guilty to possession of a firearm by a felon in return for the government's dismissal of the stolen firearm charge.  See CR Docket No. 51 at p. 2, ¶ C.  The maximum penalty for possession of a firearm by a felon, 18 U.S.C. §§ 922(g)(1) & 924(a)(2), is 10 years in prison and a $250,000 fine.  Id. Under the plea agreement, the government agreed to recommend that Mr. Harding receive credit for acceptance of responsibility, which would result in either a two- or three-point reduction in the base offense level under the

---

[1] These facts were adduced by listening to the FTR recording for the January 12, 2015, hearing.

United States Sentencing Guidelines ("USSG").  Id. at pp. 3-4, ¶¶ E & F.  The government agreed to recommend a sentence within the USSG range.  Id. at p. 4, ¶ G.  In return, Mr. Harding agreed he would not move for a downward departure or downward variance from the USSG range.  Id. at p. 5, ¶ I. Essentially, then, the plea agreement obligated Mr. Harding to also accept a sentence that was within the USSG range.  Id.

A change of plea hearing was scheduled for July 9, 2015.  That same day, Mr. Harding moved to withdraw his plea agreement and the district court granted that motion.  See CR Docket Nos. 55 & 56.  A jury trial was held January 26 through 29, 2016.  Prior to trial, defense counsel moved the court for an order in limine prohibiting any mention at trial of the fact that Mr. Harding's nationality was "Jamaican."  See CR Docket No. 85, at p. 2, ¶ 5. The court denied the motion because Mr. Harding's nationality was part of how a witness had identified Mr. Harding to police.  See CR Docket No. 117 at pp. 6-7, ¶ G.5.  The jury found Mr. Harding guilty on both counts of the indictment.  See CR Docket No. 130.

Mr. Harding was sentenced on June 1 and 2, 2016.  See Docket Nos. 150 & 152.  Prior to his sentencing hearing, Mr. Harding submitted a letter to the court asking for leniency.  See Docket No. 146.  He did not speak on his own behalf at the sentencing hearing, but relied instead on his written letter.

After resolving objections to the presentence investigation report ("PSR"), the court found Mr. Harding's advisory USSG sentencing range as follows:

| | |
|---|---|
| Base Offense Level | 14 |
| Adjustment for Possession of a Stolen Firearm | +2 |
| Adjustment for Obstruction of Justice | +2 |
| Total Offense Level | 18 |

Mr. Harding had 0 criminal history points and was therefore in criminal history category I.  A total offense level of 18 coupled with criminal history category I yielded a USSG range of 27-33 months.  Based on arguments by defense counsel regarding Mr. Harding's prior head injury, his employment and his contribution to the support of his family, the court granted a downward variance and sentenced Mr. Harding to a term of imprisonment of 20 months.  See Sentencing Transcript ("ST") at 57-58.  Neither the court nor counsel nor Mr. Harding mentioned deportation or Mr. Harding's Trinidad citizenship in connection with Mr. Harding's sentence.  See ST; CR docket No. 146.

Mr. Harding appealed his conviction and sentence to the Eighth Circuit, which affirmed.  See United States v. Harding, 864 F.3d 961, 966 (8th Cir. 2017).  On appeal, Mr. Harding did not raise the issue whether the court erred in failing to advise him he could be deported upon conviction.  Id.

Mr. Harding then timely filed the instant § 2255 motion.  See Docket No. 1.  In his motion, Mr. Harding alleges one ground for relief based on an allegation of ineffective assistance of counsel.  Id. at p. 5.  He argues his lawyer failed to notify him that there were immigration consequences he might face [upon conviction].  Id.  He appears to argue that if he had known of the immigration consequences of a conviction, he would have pleaded guilty and

4

received an 11-month sentence "offered" by the government.  <u>See</u> Docket
No. 17 at p. 3, Mr. Harding's response to the court's order to show cause
(stating if "constitutionally competent counsel would have advised him that
taking a plea for a lesser sentence or a conviction for 11 months, he would
have avoided any immigration consequences that might subject him to
automatic deportation and that if he went to trial and was found guilty he
would receive a maximum sentence.").

Mr. Harding also alleges the court failed to notify him of immigration
consequences.  <u>See</u> Docket No. 1 at p. 5.  He also indicates he may have other
grounds for relief to raise depending upon the availability of transcripts.  <u>Id.</u>

The government moves to dismiss Mr. Harding's § 2255 motion on the
merits.  <u>See</u> Docket No. 10.  As to the court's order to show cause regarding
subject matter jurisdiction, the government agrees the court lacks jurisdiction
to handle Mr. Harding's motion.  <u>See</u> Docket No. 18.

## DISCUSSION

### A.    Subject Matter Jurisdiction

Federal courts are courts of limited jurisdiction.  <u>Bender v. Williamsport
Area Sch. Dist.</u>, 475 U.S. 534, 541 (1986).  They are limited to ruling in cases
where there is a "case or controversy," which means that there must be "a
definite and concrete controversy involving adverse legal interests at every
stage of the litigation."  <u>McFarlin v. Newport Special Sch. Dist.</u>, 980 F.2d 1208,
1210 (8th Cir. 1992).  The doctrine of mootness is tied to the case or

controversy requirement.  <u>Missouri Roundtable for Life v. Carnahan</u>, 676 F.3d 665, 674 (8th Cir. 2012).

The court may—indeed must—raise issues of subject matter *sua sponte* even if the parties assume or consent to jurisdiction.    See <u>Hart v. United States</u>, 630 F.3d 1085, 1089 (8th Cir. 2011) (courts have "a special obligation to consider whether [they have] subject matter jurisdiction in every case" and must "consider *sua sponte* [the court's subject matter jurisdiction . . . where . . . [the court] believe[s] that jurisdiction may be lacking."); <u>Carton v. General Motor Acceptance Corp.</u>, 611 F.3d 451, 455 (8th Cir. 2010) (determination of subject matter jurisdiction must be addressed at the outset); <u>Lang v. Napolitano</u>, 596 F.3d 426, 429 (8th Cir. 2010) (district court erred because it should have dismissed plaintiff's claim where the court lacked subject matter jurisdiction without reaching the merits of those claims).

For a federal court to have subject-matter jurisdiction over a habeas petitioner, the petitioner must "be 'in custody' under the conviction or sentence under attack *at the time his petition is filed*."  <u>Maleng v. Cook</u>, 490 U.S. 488, 490 (1989) (emphasis added).  That being said, " 'the use of habeas corpus has not been restricted to situations in which the applicant is in actual, physical custody.' " <u>Justices of Boston Municipal Court v. Lydon</u>, 466 U.S. 294, 300 (1984) (citing <u>Jones v. Cunningham</u>, 371 U.S. 236, 239 (1963)).  Indeed, "[t]he requirement of custody has been equated with significant restraints on liberty, such as parole or release on the individual's own recognizance."  <u>Harvey</u>, 526 F.2d at 841; <u>see also</u> <u>Hensley</u>, 411 U.S. at 349.  Supervised release status has

6

also been determined to constitute custodial status for purposes of habeas relief. United States v. Cervini, 379 F.3d 987, 989 n.1 (10th Cir. 2004). Similarly, being on probation, parole, or being ordered to participate in certain rehabilitation programs constitutes being in custody. Jones, 371 U.S. at 242-43 (parole); Dow v. Circuit Court of the First Circuit, 995 F.2d 922, 923 (9th Cir. 1993) (rehabilitation programs); and United States v. Lopez, 704 F.2d 1382, 1384 n.2 (5th Cir. 1983) (probation). The Court has allowed a habeas petition to proceed where the petitioner was in custody at the time he filed his petition, though he was thereafter released from prison. Carafas v. LaVallee, 391 U.S. 234, 237-38 (1968).

To determine if petitioner's liberty is significantly restrained, courts often look to whether the petitioner is subject to restraints not shared by the public, that is, the obligation to appear before the court at any time so ordered (supervisory control), and whether petitioner can come and go at will without fear of imminent re-incarceration for violating conditions of release. Hensley, 411 U.S. 351-52.

These factors are in keeping with the characteristics of judicial measures like parole, probation, or pre-trial release (bail or personal recognizance), but not the imposition of a fine. See Mabry v. Johnson, 467 U.S. 507, 507 n.3 (1984), disapproved of on other grounds by Puckett v. United States, 556 U.S. 129, 138 n.1 (2009) (prisoner on parole is in custody for purposes of habeas petition); Lydon, 466 U.S. at 301 (pretrial release on personal recognizance constitutes custody); Hensley 411 U.S. at 351-53 (release on personal

recognizance pending execution of sentence constitutes custody).  See also Evitts v. Lucey, 469 U.S. 387, 391 n. 4 (1985) (collateral consequences of conviction, such as the possibility that conviction would be used to subject petitioner to felony offender prosecution or to impeachment in future proceedings, prevented the case from becoming moot after petitioner released from custody *yet while habeas petition was still pending* because jurisdiction first attached when petitioner filed habeas petition **while in custody**).

Courts have determined that revocation of a license or registration as a sex offender do not satisfy the custody requirement.  See Lefkowitz v. Fair, 816 F.2d 17, 20 (1st Cir. 1987); Lillios v. New Hampshire, 788 F.2d 60, 61 (1st Cir. 1986) (*per curiam*); Ginsberg v. Abrams, 702 F.2d 48, 48 (2d Cir. 1983) (*per curiam*); Virsnieks v. Smith, 521 F.3d 707, 718-20 (7th Cir. 2008) (collecting cases).

Where a sentence has fully expired, including post-conviction supervision, at the point when the habeas petition is filed, the petitioner is no longer "in custody" within the meaning of the habeas statutes even if he continues to feel the collateral consequences of his conviction.  Maleng, 490 U.S. at 492.

Mr. Harding argues his case is not moot because of the collateral consequences he continues to experience because of the conviction—namely his deportation from America.  In Carafas v. LaVallee, 391 U.S. 234, 238 (1968), the Court pointed to collateral consequences of a criminal conviction to determine that a habeas petitioner's claim was not moot.  Importantly,

however, the petitioner in that case had filed his habeas petition with the district court while he was still "in custody." Id.  The Court held because of this fact, federal jurisdiction attached in the district court upon filing and that jurisdiction was not defeated by the petitioner's later release. Id.  The subsequent case of Maleng makes clear that if the habeas petition was filed after the sentence of imprisonment and all subsequent supervision has concluded, the petitioner is not "in custody" and the court cannot adjudicate his petition even if he experiences collateral consequences. Maleng, 490 U.S. at 491-92.

Mr. Harding's exact situation appears to have been addressed by the Eighth Circuit in Kandiel v. United States, 964 F.2d 794 (8th Cir. 1992).  In that case, Kandiel filed a § 2255 motion in the district court after his sentence had fully expired. Id. at 795.  He was, at the time, however, being held by the Immigration and Naturalization Service pending deportation based on his convictions. Id.  The district court concluded Kandiel was not "in custody" and dismissed his petition. Id. at 796.  Kandiel argued on appeal that his deportation proceedings constituted collateral consequences of his conviction such that his habeas petition was not moot. Id.  Following Maleng, the Eighth Circuit agreed with the district court and affirmed. Id.  The court held that deportation proceedings were merely a collateral consequence of Kandiel's convictions and did not render him "in custody." Id.  In Kandiel, as here, Kandiel's sentence had fully expired *before* he filed his § 2255 motion. Id.

Here, it appears Mr. Harding's § 2255 motion is moot.  He signed his § 2255 motion on March 19, 2018.  <u>See</u> Docket No. 1 at p. 7.  His supervised release was terminated prior to that date, on February 6, 2018.  <u>See</u> <u>United States v. Harding</u>, 5:14-cr-50122-JLV-1, Docket No. 184 (DSD Feb. 6, 2018). Therefore, at the time Mr. Harding filed his § 2255 motion, he was not in custody in a prison, he was not on supervised release, and his sentence had fully expired.  Even if there are collateral consequences from his conviction, under these facts, it appears Mr. Harding is no longer "in custody" as required in order to petition for habeas relief.  <u>Id.</u>

If § 2255 does not provide relief for a petitioner because he is no longer "in custody," courts are encouraged to consider a movant's § 2255 motion as an application for a writ of error *coram nobis*.  <u>Kandiel</u>, 964 F.2d at 798.  A writ of error *coram nobis* may only issue under compelling circumstances such as are necessary to achieve justice.  <u>Id.</u>  The movant must establish fundamental errors and compelling circumstances.  <u>Id.</u>  Because the court believes Mr. Harding cannot make such a showing, the court evaluates his claims on the merits in order to demonstrate why such an extraordinary showing cannot be made here.

**B.    Ineffective Assistance of Counsel Claim**

**1.    Standard**

Mr. Harding alleges his counsel rendered ineffective assistance of counsel to him because she never advised him that one consequence of his conviction might be that he would get deported from the United States.  <u>See</u> Docket No. 1

at p. 5.  He alleges he would have received an 11-month sentence if he had pleaded guilty instead of going to trial, and that a sentence of 11 months would not have triggered deportation.  See Docket No. 17 at p. 3.

The Sixth Amendment of the Constitution of the United States affords a criminal defendant with the right to assistance of counsel.  U.S. Const. amend. VI.  The Supreme Court "has recognized that 'the right to counsel is the right to effective assistance of counsel.' "  Strickland v. Washington, 466 U.S. 668, 698 (1984) (citing McMann v. Richardson, 397 U.S. 759, 771, n.14 (1970)). Strickland is the benchmark case for determining if counsel's assistance was so defective as to violate a criminal defendant's Sixth Amendment rights and require reversal of a conviction.  Id. at 687.  "When a convicted defendant complains of the ineffectiveness of counsel's assistance, the defendant must show that counsel's representation fell below an objective standard of reasonableness."  Id. at 687-688.  The defendant must also show that counsel's unreasonable errors or deficiencies prejudiced the defense and affected the judgment.  Id. at 691.  The defendant must show, "there is a reasonable probability that, absent the errors, the factfinder would have had a reasonable doubt respecting guilt."  Id. at 695.  In sum, a defendant must satisfy the following two-prong test.  Id. at 687.

> First, the defendant must show that counsel's performance was deficient.  This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment.  Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable.  Unless a defendant makes both showings, it

11

cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Id.

"There is a presumption that any challenged action was sound trial strategy and that counsel rendered adequate assistance and made all significant decisions in the exercise of professional judgment." Hall v. Luebbers, 296 F.3d 685, 692 (8th Cir. 2002). It is the petitioner's burden to overcome this presumption, and a "petitioner cannot build a showing of prejudice on a series of errors, none of which would by itself meet the prejudice test." Id. Counsel's conduct must be judged by the standards for legal representation which existed at the time of the representation, not by standards promulgated after the representation. Bobby v. Van Hook, 558 U.S. 4, 7-9 (2009). American Bar Association standards and similar directives to lawyers are only guides as to what reasonableness of counsel's conduct is, they are not its definitive definition. Id. The Supreme Court distinguishes between those cases in which the new evidence "would barely have altered the sentencing profile presented to the sentencing judge," and those that would have had a reasonable probability of changing the result. Porter v. McCollum, 558 U.S. 30, 41 (2009).

In assessing the prejudice prong, it is important for courts to consider "the totality of the available mitigation evidence 'both that adduced at trial, and the evidence adduced in the habeas proceeding' " and "reweigh it against the evidence in aggravation." Id. at 40-41 (quoting Williams v. Taylor, 529 U.S. 362, 397-98 (2000)). It is not necessary for the petitioner to show "that

12

counsel's deficient conduct more likely than not altered the outcome" of his case, only that there is "a probability sufficient to undermine confidence in [that] outcome." Id. at 44. Judicial scrutiny of attorney performance is highly deferential, with a strong presumption that counsel's conduct falls within the range of reasonable professional conduct. Strickland, 466 U.S. at 698.

The Supreme Court addressed the issue of an ineffectiveness claim where the defendant rejected a plea offer and went to trial because of counsel's allegedly defective advice in Lafler v. Cooper, 566 U.S. 156 (2012). The Court held that where counsel's ineffective advice led the petitioner to reject a plea offer, and where the prejudice alleged is having to stand trial, petitioner must show that but for the ineffective advice, there is a reasonable probability that the plea offer would have been presented to the court, that the court would have accepted its terms, and that the conviction or sentence, or both, under the offer's terms would have been less severe than under the actual sentence received. Id. at 164. The parties agreed that Cooper's counsel's advice about the plea offer fell below accepted standards and was ineffective, so the only issue was whether Cooper could show prejudice under Strickland. Id. at 163. The government argued that, because the trial itself was fair, the sole purpose of the Sixth Amendment--to provide a fair trial--was satisfied and there could be no prejudice. Id. at 164.

The Court rejected that narrow view of the Sixth Amendment, holding that its purpose is to ensure effective assistance at critical stages of a criminal proceeding, including pretrial stages, sentencing, and appeal. Id. at 164-65.

The fact that a trial occurred does not, by itself, obviate a constitutional error--rather, the Court's inquiry in the past has always been whether the advent of a fair trial after the error cured the particular error.  Id. at 166-70.

### 2.   Application of <u>Strickland</u> to Mr. Harding's Claim

#### a.   Deficient Performance

Neither Mr. Harding nor the government has produced an affidavit from Mr. Harding's trial counsel regarding whether she did or did not advise Mr. Harding about the immigration consequences of a conviction.  The record certainly reflects that counsel knew Mr. Harding was not a United States citizen as she filed a motion *in limine* prior to trial seeking to keep that information from the jury.

The government's motion to dismiss Mr. Harding's § 2255 motion is akin to a motion under Federal Rule of Civil Procedure 12(b)(6).  Compare Governing Rules 4 & 5 (allowing respondent to respond to petitioner's habeas petition with a motion), with Fed. R. Civ. P. 12(b)(6) (same); see also Ebert v. Clarke, 320 F. Supp. 2d 902, 909-10 (D. Neb. 2004) (holding that Fed. R. Civ. P. 12(b)(6) applies in habeas proceedings under § 2254).  Therefore, as is consistent with Rule 12(b)(6) motions, the court assumes the truth of Mr. Harding's sufficiently pleaded allegations.  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

"The weight of prevailing professional norms supports the view that counsel must advise her client regarding the risk of deportation."  Padilla v. Kentucky, 559 U.S. 356, 367 (2010).  In Padilla, the Supreme Court held Padilla's trial counsel was deficient in failing to advise him before he entered a

14

plea of guilty that deportation was a likely possible consequence of his plea.  Id. at 369.  The Court remanded to the Kentucky courts to determine whether Padilla could establish prejudice under Strickland.  Id.  This court, therefore, assumes without so holding that counsel failed to advise Mr. Harding of the immigration consequences of a conviction (whether through a plea or a trial) and that counsel's failure to so advise constitutes deficient performance.

   **b.** **Prejudice**

  Even though the court takes as proven for purposes of the government's motion to dismiss counsel's deficient performance, Mr. Harding still must show that he was prejudiced by counsel's failure to advise him of the immigration consequences of a conviction.  Here, this is particularly a sticky issue for Mr. Harding to prove because the adverse immigration consequences he complains of would come about as a result of a *conviction*, whether that conviction occurred through a plea or following a trial.

  In Garcia v. United States, 679 F.3d 1013, 1014 (8th Cir. 2012), the Eighth Circuit affirmed a district court's denial of habeas relief without an evidentiary hearing under § 2255 for ineffective assistance under a rejected plea offer scenario.  In that case, the defendant claimed that his lawyer had failed to tell him (because he himself did not know), how the USSG would work in a plea situation versus how the guidelines would be applied after a trial— specifically that by pleading guilty pursuant to the government's offer would result in Garcia receiving a downward adjustment under the USSG for acceptance of responsibility, a benefit that would not occur after a trial.  Id. at

1014-15.  The defendant was charged with both a conspiracy count and a distribution count.  Id.

The Eighth Circuit said that the defendant could not show that he would have accepted the plea agreement but for counsel's ineffectiveness because he adamantly denied his guilt at trial and at sentencing.  Id.  The Eighth Circuit noted that both of the government's plea offers would have required Garcia to admit that he brought a pound of methamphetamine to Rapid City on two occasions.  Id.  Also, the defendant could not have entered an open plea without benefit of a plea agreement because he would have been required to admit to both the conspiracy charge and the distribution charge in order to get credit for acceptance of responsibility.  Id.  The transcript of the trial and the sentencing demonstrated that defendant was not willing to admit this.  Id. (citing Chesney v. United States, 367 F.3d 1055, 1059-60 (8th Cir. 2004); Sanders v. United States, 341 F.3d 720, 722-23 (8th Cir. 2003)).

Here, as in Garcia, the main difference between the sentence Mr. Harding actually received after a trial and the sentence he would have been eligible for if he had accepted the government's plea offer was the difference between getting credit for acceptance of responsibility under the USSG.  If Mr. Harding had pleaded guilty pursuant to the government's offer, he would have received 2 or 3 fewer points for acceptance of responsibility.  See CR Docket No. 51 at pp. 3-4, ¶¶ E & F.  Whereas his total offense level under the USSG after trial was 18, it may have been 15 under the plea agreement.

Mr. Harding's sentencing range with a total offense level of 18 after a trial was 27 to 33 months.  If he had entered a plea of guilty, his total offense level would have been 15, with a resultant sentencing range of 18 to 24 months. The sentence Mr. Harding actually received was 20 months' imprisonment. Thus, the sentence he actually received was well within the 18 to 24 month range he would have been eligible for had he pleaded guilty instead of going to trial.

Mr. Harding appears to assert that the government promised him a sentence of 11 months under the plea agreement.  See Docket No. 17 at p. 5 (stating "if he pled guilty to the 11 months he was offered he would be able to avoid deportation. . ."). This assertion is simply not true.

As discussed above, the bottom of Mr. Harding USSG range if he received 3 fewer points for acceptance of responsibility by way of pleading guilty was 18 months.  However, *if* Mr. Harding accepted the government's plea offer, he had to *promise* not to ask for a downward departure or variance from the USSG range.  See CR Docket No. 51 at p. 5, ¶ G.  Furthermore, the government never agreed to an 11-month sentence under the terms of that agreement.  Instead, the government agreed to recommend a *within-USSG* sentence.  Id. at p. 4, ¶ G. Thus, under the terms of the plea agreement, *both* Mr. Harding and the government had to stipulate to a within-USSG sentence.  Id.  Each was free to argue for, and present evidence in support of, a particular sentence *within* that range, but both agreed not to seek a sentence outside that range.  For Mr. Harding, that meant he could not seek a sentence lower than the USSG

17

range—18 months--by asking for a downward variance or departure.  For the government, that meant it could not seek a sentence higher than the USSG range—24 months--by asking for an upward variance or departure.  There was never a promise of a sentence of 11 months but rather a requirement of a sentence of *at least* 18 months under the terms of the plea offer.

Under Lafler, Mr. Harding must show that there is a reasonable probability the end result of the criminal process would have been more favorable than it actually was had he accepted the plea offer.  Lafler, 566 U.S. at 164.  Here, because the plea agreement, had it been accepted by Mr. Harding, ensured a minimum sentence of 18 months, and Mr. Harding actually received a sentence of 20 months, he cannot show a reasonable probability of a more favorable result—as regards the issue he complains about, his immigration status (as will be more fully discussed below).  This is especially true when one remembers the 20-month sentence was only made possible by defense counsel's motion for downward variance.  That type of motion would not have been available to Mr. Harding under a plea scenario.

In an effort to liberally construe Mr. Harding's argument, he may believe that (1) if he had pleaded guilty pursuant to the government offer, then (2) the court would have varied downward by 7 months from the bottom of his USSG range.  That is the only way for the court to comprehend Mr. Harding's assertion that he would have received a sentence of 11 months had he accepted the government plea offer (18 months bottom of USSG range – 7 months variance employed at sentencing = 11 months).  See Docket No. 17 at

p. 3.  However, as explained above, Mr. Harding *could not* have received an 11-month sentence if he had accepted the government plea offer.

The 7-month downward variance the district court granted to Mr. Harding at his sentencing was the result of defense counsel's *motion* for downward departure or variance.  That motion would have been prohibited by the plea agreement had Mr. Harding accepted the government's plea offer.  Thus, if Mr. Harding had pleaded guilty, he would have been subject to a USSG range of 18-24 months' imprisonment.  The least he could have received was 18 months.  He could not have received 11 months.  There is no support for the idea the district court would have *sua sponte* varied downward by 7 months in the absence of any defense motion asking for such a variance.

In any case, Mr. Harding's apparent belief that he would not be subject to deportation if he had received a sentence of 11 months does not appear to be founded on the law.  Any alien lawfully admitted to the United States becomes deportable upon being "convicted under any law of . . . possessing. . . a firearm or destructive device."  See 8 U.S.C. § 1227(a)(2)(C).  Similarly, an alien who is convicted of an "aggravated felony" is subject to deportation.  See 8 U.S.C. § 1227(a)(2)(A)(iii).  In the case of a firearms offense, the deportation is not qualified by the length of one's sentence, only by the substance of the conviction itself.  Id.  It is undeniable Mr. Harding would have been convicted of possessing a firearm whether he pleaded guilty pursuant to the government's offer, or whether he went to trial, as he did.  He would then be subject to deportation regardless of the sentence.  Id.

19

Some types of offenses *are* qualified by a one-year term of sentence under the immigration statutes.  For example, the definition of "aggravated felony" includes a crime of violence, theft, racketeering, bribery, or perjury, but *only* if one's sentence of imprisonment equals or exceeds one year.  See 8 U.S.C. § 1101(a)(43)(F), (G), (J), (R), &  (S). [2]  Only under a one-year sentence can these convictions give rise to deportation.  Id.; 8 U.S.C. § 1227(a)(2)(A)(iii).  Other offenses, such as criminal possession of a firearm or possession of child pornography are not limited by the one-year term—they are deportable convictions regardless of the sentence received.  Id. at (E) & (I).  Possession of a firearm is a deportable offense standing alone, and also by virtue of its inclusion in the definition of "aggravated felony."  See 8 U.S.C. §§ 1101(a)(43)(E), 1227(a)(2)(A)(iii) and 1227(a)(2)(C).  Under none of these provisions is the deportation for a firearms possession offense qualified by the requirement of receiving a sentence of one year or more.  See 8 U.S.C. §§ 1101(a)(43)(E), 1227(a)(2)(A)(iii) and 1227(a)(2)(C).

This court concludes Mr. Harding cannot show prejudice under Strickland for his counsel's alleged failure to tell him of the deportation consequences of a conviction.  Once charged with a firearms offense, the only avenue for Mr. Harding to escape a deportable status was to go to trial and win an acquittal.  He did avail himself of his right to a trial, but did not win an

---

[2] The Supreme Court recently held the residual clause portion of the definition of "crime of violence" under the Immigration Act statutes is unconstitutional.  Sessions v. Dimaya, ___ U.S. ___, 138 S. Ct. 1204, 1223 (2018).  That portion of the statute—the residual clause--is not called into question in Mr. Harding's case.

acquittal.  A guilty plea would not have offered Mr. Harding any opportunity to escape becoming deportable.  Although a plea may have yielded a sentence that was shorter by two months (i.e. 18 months vs. 20 months), that two-month difference had no impact on Mr. Harding's immigration status.  Even if Mr. Harding received an 11-month sentence, it would not have changed his deportable status.  Therefore, there is no Strickland prejudice.  See Arias-Gonzales v. United States, 486 Fed. Appx. 617, *1 (8th Cir. 2012) (finding no Strickland prejudice where counsel did not discuss immigration consequences with defendant, but defendant did not plead guilty but instead chose to go to trial).

Because Mr. Harding cannot prove up the twin prongs of an ineffective assistance of counsel claim considered on its merits, it stands to reason he cannot prove the heightened and more compelling standard for a writ of error *coram nobis*.  The court notes Mr. Harding never asserts he is innocent, that the government hid evidence from him, or that he has newly discovered evidence which could not have previously been discovered.  Therefore, this court respectfully recommends Mr. Harding's ineffective assistance claim be dismissed.

**C.    The Court Failed to Inform Mr. Harding of Possibility of Deportation**

Mr. Harding also includes in his claim the assertion that the court failed to inform him of the deportation consequences of his conviction.  Although this appears to be true—neither this magistrate judge, nor the district judge, nor the government informed Mr. Harding that deportation might be a consequence

21

of a conviction—the government argues this claim is procedurally defaulted.
The court agrees.

Generally, petitioners are precluded from asserting claims pursuant to
§ 2255 that they failed to raise on direct appeal.  United States v. Frady, 456
U.S. 152, 167-68 (1982); McNeal v. United States, 249 F.3d 747, 749 (8th Cir.
2001).  When a § 2255 petitioner asserts a claim that is procedurally defaulted
because it was not raised on direct appeal, the claim can only proceed after the
petitioner has shown either:  (1) actual innocence or (2) that the procedural
default should be excused because there was both cause for the default and
actual prejudice to the petitioner.  Bousley v. United States, 523 U.S. 614, 621-
22 (1998); McNeal, 249 F.3d at 749.  Therefore, barring a claim of actual
innocence, a petitioner must show both cause for why he failed to raise an
issue on direct appeal as well as actual prejudice caused by the alleged errors.

Here, Mr. Harding pursued a direct appeal and he did not raise this issue
on appeal.  The issue is, therefore, procedurally defaulted.  Furthermore, even
if Mr. Harding could establish "cause" to excuse his default, for all the same
reasons discussed above in connection with the ineffective assistance claim,
Mr. Harding cannot show any prejudice for this claim.  Once charged with
illegal possession of a firearm, his only avenue for avoiding deportable status
was to avoid a conviction.  Accepting the government's plea offer would not
have changed this outcome.  Nothing the court said or, in this case, failed to
say, would have changed the circumstances of Mr. Harding's current situation

of being in deportable status.  Accordingly, the court recommends denying this ground for relief.

**D.    "TBD" Claim**

Mr. Harding also hints he may have other "to be determined" claims. However, vague claims without any facts or law do not suffice to support relief under § 2255.  <u>Voytik v. United States</u>, 778 F.2d 1306, 1308 (8th Cir. 1985). For the reason that Mr. Harding has not stated any facts or legal grounds for his "TBD" claim, the court recommends this claim be dismissed too.

## CONCLUSION

Based on the above law, facts, and analysis, this court respectfully recommends movant Patrick Harding's motion to vacate, set aside or correct his sentence [Docket No. 1] be denied and the government's motion to dismiss [Docket No. 10] be granted.

## NOTICE OF RIGHT TO APPEAL

The parties have fourteen (14) days after service of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1), unless an extension of time for good cause is obtained.  <u>See</u> Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(B).  Failure to file timely objections will result in the waiver of the right to appeal questions of fact.  <u>Id.</u>  Objections must be timely and specific in order to require *de novo* review by the District Court.

Thompson v. Nix, 897 F.2d 356 (8th Cir. 1990); Nash v. Black, 781 F.2d 665 (8th Cir. 1986).

DATED June 6, 2018.

BY THE COURT:

VERONICA L. DUFFY
United States Magistrate Judge